ISIDOR HABER, Respondent, *v.* PARAMOUNT ICE CORPORATION, Appellant.*

Second Department, November 3, 1933.

*Frank W. Holmes*, for the appellant.

*David Masnick* [*Herman S. Bachrach* of counsel], for the respondent.

DAVIS, J.   The plaintiff has judgment for a permanent injunction restraining the operation of defendant's business between the hours of nine P. M. and six A. M., in order that the plaintiff and his family may not be disturbed by noises and vibrations which are said to interfere with their sleep and repose.

The plaintiff is the owner of a large building on Steuben street, Brooklyn, devoted chiefly to the business of importing and selling foreign foodstuffs, and used as a storage warehouse and for the distribution of merchandise by trucks to customers.   The defendant built on the premises immediately adjoining a large building for the manufacture of ice, which was sold and distributed to purchasers by trucks.   This building and its machinery cost about $550,000, and are concededly of the most modern and approved type.   It was conceded on the argument and the evidence indicates that several men were employed in manufacturing by defendant.   There is proof, although the fact was not found, that the plant cannot operate economically and successfully unless the operation is continuous. Both these buildings are in the industrial zone and located on a street and in a neighborhood devoted almost exclusively to manufacturing and business purposes.   There is naturally much noise and vibration arising from all sorts of causes — manufacturing, street cars, elevated railway trains and delivery by trucks.   It is

not a neighborhood one would select as a place of residence if he desired quiet and repose. In so far as the record discloses there are no residences in that locality except that of plaintiff.

In the story above his warehouse and store the plaintiff fitted up an apartment for living quarters for his family so that his wife " could control and manage plaintiff's business, * * * and at the same time control plaintiff's household." It was alleged in the complaint that the business of the defendant as operated constituted a nuisance because of the loud, disagreeable and incessant noises, with great jar and vibration, thereby affecting the health of plaintiff's family and the peaceful enjoyment of their apartment. It was also alleged that the value of the premises had been seriously impaired " to the damage of the plaintiff in the sum of $20,000," for which, in addition to an injunction, judgment was demanded.

After proof had been made in respect to the alleged nuisance, there was a suspension of the trial and defendant expended $14,000 in making certain changes in its plant to overcome the complaints the plaintiff had made concerning noise and vibration. The complaints, however, did not abate. If we looked solely at the testimony of witnesses, we would incline to the view that the plaintiff had greatly magnified the noises and vibrations coming from this source, and exaggerated substantially the results in respect to the discomfort and ill health of himself and family. But the learned trial justice, by consent, visited the premises on several occasions, giving the observations he made (not very definitely); and we accept for the present the conclusions he reached in respect to the continuance of the noise and vibrations to some extent arising from the operation of the defendant's plant even after the alterations were made. (*Braisted* v. *Brooklyn & R. B. R. R. Co.*, 46 App. Div. 204.)

The plaintiff, despite the allegations in the complaint, made no proof of actual money damage to his property or of damages for personal injuries suffered by reason of ill health or discomfort. There were conflicting findings on the question of property damage, but the plaintiff did not ask that any sum be awarded. Whatever basis there is for the judgment for a permanent injunction must be found in the " actual physical discomfort and annoyance to plaintiff, and his immediate family," preventing them " from obtaining adequate sleep," whereby they " have become ill, and suffer from nervous exhaustion," for which no damages are asked. It has been found that the premises have not been rendered less valuable for business purposes by reason of the operation of the defendant's plant. The plaintiff, primarily for reasons of convenience, has set up a residence for himself and his family in the midst of a busi-

ness and industrial neighborhood; and his real grievance seems to be that defendant has interfered with what, under the circumstances, might be considered an unusual use of his property.

There are findings that the defendant's business at no time constituted a public nuisance or a nuisance *per se;* that the neighborhood has not been a residential district for many years; that no one except plaintiff has ever complained that the operation of the plant constituted a private nuisance; and that the operation of the plant in the daytime " has not been, is not a nuisance to the plaintiff or any one else."

It would seem somewhat strange that noises and vibrations of such a violent character as those described by plaintiff would be entirely innocuous during the daytime, while the plaintiff's family were about their ordinary duties — including, we assume, the periods for meals and rest — and yet be so devastating in their effects at night. But such is evidently the case, for the learned court says in its opinion: " During the trial plaintiff advised the court that he had no complaint as regards the operation by the defendant of its ice plant during the business hours of the daytime." Therefore, we may safely assume that the facts upon which the permanent injunction was granted were, as previously stated, the causing of physical discomfort to the plaintiff and his family at night, with loss of sleep and resulting ill health, for which no damages are claimed. All this by reason of vibrations and noise arising exclusively from the operation of defendant's plant and not accentuated by noises from other sources, such as street cars, elevated railroad trains, trucks and the conduct of business enterprises in this industrial zone where plaintiff, to serve the purposes of his business, had voluntarily made his home.

The general rule is that mere discomfort to persons living in adjacent property does not furnish a reason for forbidding the necessary use of one's property conducted without negligence and with proper appliances, particularly when the property is located in the business and industrial section of a city. (*Booth* v. *R., W. & O. T. R. R. Co.,* 140 N. Y. 267, 274; *McCarty* v. *Natural Carbonic Gas Co.,* 189 id. 40, 49; *People* v. *Cuneo Eastern Press,* 257 id. 208; *Pritchard* v. *Edison El. Illuminating Co.,* 92 App. Div. 178; affd., 179 N. Y. 364; *Bove* v. *Donner-Hanna Coke Corporation,* 236 App. Div. 37, 39.) The rule varies with the circumstances of each particular case, and injunctions are granted or withheld according to the inherent equities, including the location and use of the property, the necessities, the degree of discomfort, and frequently the additional fact that the person complaining may be adequately compensated by money damages.

If plaintiff had suffered actual damages, he could have recovered them in this action. As we have said, he did not seek damages either for injury to his property or for the discomfort suffered to the time of trial, though some proof was offered on both subjects; nor for any permanent loss. With this injunction he is very likely in a position where he may drive defendant out of business or compel it to purchase its peace on his own terms. We doubt if this result was overlooked by him in view of the course the trial took.

Where an obviously inequitable result will follow the granting of a permanent injunction, and an award of damages will adequately compensate the injured party, the courts will fix a sum as permanent damages and give to a defendant the option of paying such sum or accepting the injunction. In England by statute (Lord Cairns' Act, 21 & 22 Vict. chap. 27) it is provided that such damages may be given in lieu of injunction; and the rule is applied where the plaintiff's injury is small, capable of being estimated in money and can thereby be adequately compensated, and if the case is one in which it would be oppressive to the defendant to grant an injunction. (*Shelfer* v. *City of London Electric Lighting Co.*, [1895] 1 Ch. 287, 322.)

The same general rule is applied by the courts of this State — in cases involving a restrictive covenant (*Amerman* v. *Deane*, 132 N. Y. 355; *McClure* v. *Leaycraft*, 183 id. 36; *Forstmann* v. *Joray Holding Co., Inc.*, 244 id. 22); and in cases involving trespass and nuisance (*Goldbacher* v. *Eggers*, 38 Misc. 36; affd., 82 App. Div. 637; 179 N. Y. 551; *Gelway* v. *M. E. R. Co.*, 128 N. Y. 132; *Pappenheim* v. *M. E. R. Co.*, Id. 436; *Sadlier* v. *City of New York*, 185 id. 408, 415; *Raymond* v. *Transit Development Co.*, 65 Misc. 70; affd., 134 App. Div. 981; *Robb* v. *Rubel Bros., Inc.*, 107 Misc. 33.)

On the facts disclosed in this record we think that, in view of the value of defendant's property, its useful character in manufacture and the employment of labor, and its location in a nonresidential zone, it is unjust and oppressive to enjoin permanently its use during a period when it may profitably be employed. Particularly is this true when the plaintiff asserts no actual damage and seems content to wait in that respect until he has the defendant helpless. He should be required to make proof of damages at this time, if he has actually suffered any, and the defendant should be given the option of paying the amount found as permanent damages in lieu of a judgment for a permanent injunction, if on a new trial it shall appear that the facts then established are such as not to warrant an injunction and that an award of damages will adequately compensate plaintiff.

It follows that the judgment should be reversed on the law and the facts and a new trial granted, costs to abide the event. All findings of fact are reversed.

LAZANSKY, P. J., HAGARTY and CARSWELL, JJ., concur; KAPPER, J., dissents and votes to affirm.

Judgment reversed on the law and the facts and a new trial granted, costs to abide the event. For the purpose of granting a new trial, all findings of fact are reversed.